IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE R. PARADA,

        Plaintiff,

vs.                                                        No.  02cv0998 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        This matter is before the Court on Plaintiff's (Parada's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. 7]**, filed May 19, 2003, and fully briefed August 8, 2003. The Commissioner of Social Security issued a final decision denying Parada's application for disability insurance benefits and supplemental security income benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

        Parada, now forty-three years old, filed his application for disability insurance benefits and supplemental security income benefits on May 12, 1998, alleging disability since May 8, 1996, due to a back condition. Parada completed the sixth grade in Mexico and has past relevant work as a laborer in various oil field occupations. On May 19, 2000, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Parada's impairments were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of

Impairments, Subpart P, Appendix 1.  Tr. 14.  The ALJ specifically reviewed Listing 1.00.  The ALJ further found Parada "retained the residual functional capacity (RFC) which supports work activities not requiring the lifting of more than 30 pounds, which allow the worker to alternate sitting, standing and walking as needed throughout the workday, and which do not require the capacity to converse in English."  *Id*.  As to his credibility, the ALJ found Parada's "testimony and reports of symptoms and functional restrictions were not supported by the evidence overall in the disabling degree alleged, and, therefore, lacked credibility."  *Id.*   Parada filed a Request for Review of the decision by the Appeals Council.  On June 12, 2002, the Appeals Council denied Parada's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Parada seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Parada makes the following arguments: (1)  the ALJ mischaracterized the medical evidence in the record and his RFC; and (2) the ALJ made grossly improper evaluations of credibility as to his functional limitations.

**A.  Mischaracterization of the Evidence**

Parada claims the ALJ's finding the he retained an RFC which supports work not requiring the lifting of more than 30 pounds is not supported by the evidence.  According to Parada, his treating physician, Dr. Scioli, restricted him to less than light work.  Parada contends the ALJ erred by ignoring Dr. Scioli's opinion.  Dr. Scioli completed a Residual Physical Functional Capacity Assessment for Ability to Work form on March 20, 2000.  Tr. 170-173.  In his RFC assessment, Dr. Scioli opined that Parada could lift up to 5 pounds frequently and up to 20 pounds occasionally.  Tr. 171.  Dr. Scioli also opined Parada could continuously sit for two hours, stand and walk for thirty minutes and could only sit for four hours and stand or walk one hour in an 8-hour competitive workday.  Tr. 170.

On February 11, 1999, Dr. Scioli evaluated Parada.  Tr. 167.  Dr. Scioli opined that Parada could not do light things around his house without pain in his back and legs.  *Id.*  Dr. Scioli recommended surgery "for an L4-5, L5-S1 procedure that [ ] would be done in the form of a 360 degree fusion."  *Id.*  Dr. Scioli scheduled the surgery for June 1999 and prescribed Darvocet-N 100 (narcotic analgesic) for his pain.  *Id.*  Parada never had the surgery.

On June 20, 1998, Dr. Scioli competed a Workers' Compensation Administration Form. Tr. 153. In that form, Dr. Scioli's diagnosis was "degenerative herniated discs L4-5, L5-S1, with segmental instability, facet arthritis L4 to S1, L leg sciatica." *Id.* Dr. Scioli opined Parada could return to work but "only to sedentary jobs which would require retraining which he doesn't have education for." *Id.* Dr. Scioli rated Parada 17 % impaired. *Id.*

A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments. *Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).

In this case, the ALJ discounted Dr. Scioli's opinion stating:

> The claimant's current treating doctor has advised that he must periodically alternate sitting, standing and walking. Although he also states that the claimant can lift only 20 pounds occasionally and can never bend, stoop or kneel, these restrictions are not supported by the claimant's testimony, which indicates that he can lift 30 pounds occasionally, and that he has no difficulties with bending, stooping or kneeling. This physician's opinion is further questionable, since at the time he rendered it in March 2000, he had not seen the claimant for over a year. His previous visit with the claimant had been in February 1999, and in his report of that visit he indicated that he had not seen the patient for the previous year. There is some question in my mind, therefore, that the claimant's current treating physician has remained up to date on his condition.
>
> His clinical examinations of the patient have made few findings to support his opinion of the claimant's functioning. Moreover, while he has observed that the claimant's former physician found a serious problem with symptom magnification, and the results of the

>claimant's functional capacities evaluation also demonstrated inappropriate responses and inconsistent effort, I find it noteworthy that his physician has attempted to explain away the problems with credibility as a language problem.  Although there is some potential for misunderstanding language, the claimant's records indicate that his inappropriate pain responses and lack of effort were observations based on behavior rather than on language.  Because of all of the inconsistencies in the claimant's current doctor's opinion, I find it of limited help in my assessment of the claimant's work capacities under the standards of the Social Security Act, and that opinion is, therefore, accorded limited weight herein.  <u>My findings of the claimant's residual functional capacity are, therefore, based on his testimony as the most reliable indicator of his actual capacities for work.</u>

Tr. 14-15 (emphasis added).  The testimony the ALJ was referring to in his decision and on which he based his RFC  finding was as follows:

>Q. Okay.  And how— what can you pick up and handle constantly?
>
>A. Interpreter: [Inaudible] that he probably could lift maybe 20, 30 pounds but he feels a lot of pain.  He does not [inaudible].
>
>Q. Okay.  Well, how much can you pick up without a lot of pain?
>
>A. Maybe 50 pounds, and the pain, it doesn't come right away but when it comes it goes all the way through the head, the back of the head.

Tr. 34-35.  Later Parada's attorney elicited the following testimony:

>Q. Dr. Scioli has limited you to no more – to lifting no more than 10 pounds at best.  Do you try to lift more than that on occasion?
>
>A. Well, I can try to lift more than 10 pounds, maybe about 30 [inaudible] how am I doing, how am I feeling [inaudible].
>
>Q. What happens when you lift 30 pounds?
>
>A. I lift it but then I feel the pain and then I get like tired, like weak.
>
>Q. Okay.  Is there ever a time when your back doesn't hurt?

> A.  In the wintertime it hurts more than the summertime. In the wintertime it hurts real bad.
>
> Q.  Okay. But does it always hurt in some way, shape, or form?
>
> A.  Yeah. It always hurts. I'm always taking pills.

Tr. 39-40. Although the ALJ gave specific reasons for rejecting Dr. Scioli's opinion, the ALJ failed to mention Dr. Ralph Menard's evaluation. Tr. 111-114. Dr. Menard, a physician at St. Mary of the Plains Hospital & Rehabilitation Center, evaluated Parada on November 10, 1997, and found he "suffers from complaints of severe intractable pain related probably to his degenerative disc disease with possible herniation at L5-S1 and instability at L4-5." Tr. 114. Dr. Menard also discussed in his evaluation the discrepancies "noted by previous treating physicians that there was some discrepancy between what the patient reported as far as pain seemed to be out of proportion to his physical exam findings." Tr. 113. However, Dr. Menard followed this statement with his own observations, stating, "Certainly on what I found today, this gentleman was very cooperative and did not seem to exaggerate his symptoms appreciably for me." Tr. 114. On November 24, 1997, Dr. Menard performed a diskogram[1] and found Parada suffered from (1) L4-L5 herniated disk, posterior annular tear, with recreation concordant pain; and (2) L5-S1 severely degenerative disk with recreation lumbalgia. Tr. 111.

On January 6, 1998, Parada returned to see Dr. Menard. Tr. 110. On that day, Parada's chief complaint was "What can you tell me about the shots (discogram) you gave me? My wife died two weeks ago. I would like to do anything that can help make my pain better and I think

---

[1] Diskogram is the graphic record, usually radiographic, of diskography. Diskography is the radiographic demonstration of intervertebral disk by injection of contrast media into the nucleus pulposus. *Stedman's Medical Dictionary* 507 (26th ed. 1995).

that shot (ESI) would be a good idea." *Id.* Dr. Menard explained to Parada that he had a posterior annular tear at L4-5 and his L5-S1 was severely degenerative. Dr. Menard further explained that both discs had "recreation of concordant pain" and explained the use of epidural steroid injections. *Id.*

The ALJ also failed to mention Dr. Donald Stewart's RFC assessment. Dr. Stewart, an nonexamining agency consultant, completed an RFC assessment form on September 30, 1998. Tr. 156-163. Dr. Stewart opined Parada could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an 8-hour workday, and sit for a total of about six hours in an 8-hour workday. Tr. 157. Dr. Stewart also restricted Parada to "occasionally" climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 158.

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* The RFC assessment "must not be expressed initially in

terms of the exertional categories of sedentary [or] light;" rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC. *Id.* at *3 ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations or restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").

In this case, the ALJ based his RFC findings "on [Parada's] testimony as the most reliable indicator of his actual capacities for work." Tr. 15. The Court has reviewed Parada's testimony and finds it does not support the ALJ's RFC finding. Moreover, the ALJ failed to discuss Dr. Menard's evaluation and Dr. Stewart's RFC assessment. Accordingly, the Court finds that the ALJ's RFC finding is not supported by substantial evidence. On remand, the ALJ shall follow the procedure set forth in Social Security Ruling SSR 96-8p.

Additionally, in evaluating a claim of disabling pain, the ALJ must consider (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

In this case, the ALJ did not follow this analysis. The ALJ failed to explain why he disregarded Dr. Menard's evaluation which clearly presented objective medical evidence of a pain producing impairment. On remand, the ALJ should expressly follow the *Luna* pain analysis. The ALJ should also obtain a consultative evaluation to determine the degree of Parada's impairment and have the consultant complete a RFC assessment form. However, the Court expresses no opinion as to the extent of Parada's impairment, or whether he is or is not disabled within the meaning of the Social Security Act. The Court does not require any result. This remand simply

9

assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**DON J. SVET**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**